UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21504-CIV-COOKE/BANDSTRA

TELMO HURTADO HURTADO,

Petitioner,

vs.

UNITED STATES ATTORNEY GENERAL, et al.

Respondents.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Petitioner Telmo Hurtado Hurtado's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241 filed on June 3, 2009.  On June 23, 2009, this matter was referred to United States Magistrate Judge Ted E. Bandstra by the Honorable Marcia G. Cooke for a Report and Recommendation pursuant to 28 U.S.C. §636(b). Having carefully considered this petition, the response thereto, the court file and applicable law, the undersigned respectfully recommends that this Petition for Writ of Habeas Corpus be DENIED for the reasons explained below.

## BACKGROUND

On August 29, 2008, the United States filed a complaint on behalf of the Government of Peru with a view towards extraditing petitioner pursuant to the Extradition Treaty between the United States and Peru. See Extradition Treaty, U.S.-Peru, July 26, 2001, S. Treaty Doc. No. 107-6 ("Treaty"). The Government of Peru is seeking petitioner's extradition for his alleged involvement in the "Accomarca Massacre." Specifically, the Peruvian Government alleges that on August 14, 1985, petitioner was in charge of a

Peruvian military patrol searching the Accomarca region of Peru for members of a terrorist insurgent group, "Sendero Luminoso" or "Shining Path." During this patrol, petitioner allegedly ordered his men to round up, assemble, and murder all villagers found in the area. Petitioner admitted to Peruvian authorities that he lobbed a grenade into a house where the greatest number of villagers had been forced to assemble. In all, petitioner and his men allegedly murdered 62 people on August 14, 1985. The victims of petitioner's alleged crimes included the elderly, pregnant women, young children, and babies. Petitioner is also accused of shooting a guide whom the military had recruited to lead the soldiers to the Accomarca region. After being shot, the guide fell into a gully never to be seen again.

On September 13, 1985, petitioner went back to the site of the August 14th killings to make sure that no incriminating evidence remained. When he returned to the village, petitioner allegedly found and murdered seven witnesses to the previous killings.

After an investigation of these events, authorities in Peru filed criminal charges against petitioner. On March 11, 1986, the Supreme Court of Peru decided that the military court, not the civil court, had jurisdiction to try petitioner for the alleged crimes. Under the military court's jurisdiction, petitioner was tried and acquitted of all murder charges, but found guilty of abuse of authority. Petitioner was sentenced to six years in prison. On May 8, 1995, petitioner was released from prison in Peru. On June 19, 1995, the President of Peru granted amnesty to anyone who may have violated human rights  while combating the Shining Path guerillas.

In December of 2002, petitioner entered the United States after obtaining a

2

fraudulent visa in Peru. On January 11, 2002, the grant of amnesty and the military court's decision were declared null and void by the Supreme Court of Military Issues in Peru. On May 31, 2005, the Peruvian Supraprovincial Criminal Court took jurisdiction of petitioner's case and requested that the United States extradite petitioner to face criminal charges for his alleged involvement in the Accomarca Massacre. Specifically, petitioner is being charged with murder in violation of section 152 of the Peruvian Criminal Code of 1924 and abduction and forced disappearance in violation of section 223 of the Peruvian Criminal Code of 1924 and section 320 of the Peruvian Criminal Code of 1993.

On May 13, 2009, Magistrate Judge O'Sullivan issued an Extradition Certification and Order of Commitment and referred this matter to the Secretary of State.

On June 3, 2009, petitioner filed the instant Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241.

## STANDARD OF REVIEW

Habeas corpus review of a magistrate judge's extradition order is limited to a determination of (1) whether the magistrate judge had jurisdiction, (2) whether the offense charged is within the treaty, and (3) whether there is any evidence establishing probable cause to believe that the accused is guilty. See Fernandez v. Phillips, 268 U.S. 311, 312 (1925). Such a review "is not means for rehearing a magistrate's findings." Escobedo v. United States, 623 F.2d 1098, 1101 (5th Cir. 1980).[1]  Instead, "we review factual findings for clear error and questions of law de novo." Kasternova v. United States, 365 F.3d 980,

---

[1]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

984 (11th Cir. 2004).

Accordingly, this Court's *de novo* review is limited to (1) whether Magistrate Judge O'Sullivan had jurisdiction over the extradition hearing, (2) whether the alleged offenses are within the terms of the Treaty, and (3) whether the principle of double jeopardy forbids petitioner's extradition. Finally, the Magistrate Judge's probable cause determination must be reviewed only for clear error as it is purely factual.

### ANALYSIS

## I. THE MAGISTRATE JUDGE'S JURISDICTION

Petitioner does not contend that the Magistrate Judge lacked authority to conduct an extradition hearing. Nor does petitioner contend that this Court lacked jurisdiction over his person. Indeed, 18 U.S.C. §3184 granted this Court jurisdiction over petitioner because he was found within the Southern District of Florida and is accused of committing crimes in a foreign country covered by an extradition treaty set forth in 18 U.S.C. §3181. Thus, there is no question that Magistrate Judge O'Sullivan had jurisdiction over this matter.

## II. THE OFFENSES CHARGED ARE WITHIN THE TREATY

The undersigned next finds that petitioner is being charged with conduct that satisfies the dual criminality requirement established in Article II of the Treaty. Article II provides that "[a]n offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty." Treaty, art. II, sec. 1. This provision "ensures that the charged conduct is considered criminal and punishable as a felony in both the country requesting the suspect and the country surrendering the suspect." *Ordinola v. Hackman*,

4

478 F.3d 588, 594 n. 7 (4th Cir. 2007).

Petitioner is being charged for alleged conduct in violation of three criminal statutes under Peruvian law. Petitioner is charged with murdering 69 people in violation of section 152 of the Peruvian Criminal Code of 1924. He is also charged with the abduction and forced disappearance of a guide in violation of section 223 of the Peruvian Criminal Code of 1924 and section 320 of the Peruvian Criminal code of 1993.

The penalty for murder in violation of section 152 of the Peruvian Criminal Code of 1924 is a minimum of 25 years imprisonment. Murder is a violation of section 782.04 of Florida law and may be punishable by death or life imprisonment. Murder may also be punishable by imprisonment for any term of years or for life in violation of 18 U.S.C. §1111. Because murder is a crime punishable by imprisonment for more than one year under the laws of Peru and the United States, the undersigned finds that petitioner may be extradited for violating section 152 of the Peruvian Criminal Code in accordance with Article II of the treaty.

Abduction and forced disappearance may also be punished by imprisonment for more than one year under Peruvian law. The undersigned finds that kidnaping, a felony under section 787.01 of Florida law, is equivalent to abduction and forced disappearance under Peruvian law. It is insignificant that Peruvian law does not characterize the crime as kidnaping. *See* Treaty, art. II, sec. 3(a). Under the principle of dual criminality, "[i]t is enough if the particular act charged is criminal in both jurisdictions." *Collins v. Loisel*, 259 U.S. 309, 312 (1922). Therefore, the charges of abduction and forced disappearance under Peruvian law satisfy the dual criminality requirement and fall within the terms of the

5

Treaty. Accordingly, the undersigned recommends that petitioner be extradited for these charges because the alleged conduct is also a felony under the laws of the United States.

In so recommending, the undersigned has considered and rejected petitioner's argument that the dual criminality requirement is not satisfied because the alleged crimes occurred while he was acting in the line of military duty. Petitioner maintains that there is no state or federal statute that criminalizes murder in the line of duty. However, Peru alleges that petitioner engaged in ruthless conduct outside the scope of an ordinary military operation. Petitioner allegedly murdered innocent noncombatants including women and children. Therefore, the undersigned finds that petitioner's alleged conduct during the military patrol is criminal under the laws of Peru and the United States.

In sum, the undersigned finds that petitioner is being charged with conduct that satisfies the requirement of dual criminality. Consequently, the charges facing petitioner are within the terms of the Treaty, making extradition on all counts appropriate upon a determination of probable cause.

## III. PROBABLE CAUSE

The undersigned finds no clear error in Magistrate Judge O'Sullivan's finding that there is probable cause to believe petitioner is guilty of all crimes alleged by the Peruvian Government. Petitioner does not contest that there are reasonable grounds to believe that he committed the murders alleged on August 14, 1985. Indeed, a review of the evidence submitted by the Peruvian Government demonstrates that there are sufficient grounds to believe that petitioner is guilty of the accused conduct that took place on August 14, 1985. Therefore, the undersigned recommends that petitioner be extradited for the 62 murders

and the abduction and forced disappearance of the guide allegedly committed on that day.

Petitioner maintains that the evidence submitted by the Peruvian Government does not support a finding of probable cause to believe that he is guilty of murdering seven individuals on September 13, 1985 that may have witnessed the events on August 14, 1985. However, the undersigned concludes that there was no clear error in the Court's finding with respect to those charges. According to the Extradition Request, these allegations are supported by witnesses living in Accomarca and by a particular individual named Floriano Quispe de la Cruz.

Petitioner argues that there is no probable cause to believe he committed the September 13th murders because the Extradition Request did not provide any direct statements from the witnesses, sworn or unsworn. After reviewing the relevant case law, the undersigned finds no support for petitioner's argument. First, petitioner cites no authority that supports his position. More importantly, binding Eleventh Circuit precedent demonstrates that properly authenticated documents submitted by a requesting state may be considered by a magistrate judge regardless of whether the statements they contain are sworn or unsworn. *See Afanasjev v. Hurlburt*, 418 F.3d 1159, 1165 (11th Cir. 2005) (holding that "the magistrate's finding of probable cause was not undermined by the fact that the indictment contained unsworn hearsay statements of witnesses and victims"); *Escobedo*, 623 F.2d at 1102 n.10 (holding that compound hearsay can be considered in an extradition hearing).

Moreover, courts have also held that authenticated documents submitted by a requesting state may summarize witness statements provided that those summaries

contain sufficient detail.[2] *See Zanazanian v. United States*, 729 F.2d 624, 627 (9th Cir. 1984); *Noel v. United States*, 12 F. Supp. 2d 1300, 1303 (M.D. Fla. 1998). In this case, the Government of Peru provided sufficient details of the events that allegedly took place on September 13, 1985 by summarizing witness accounts. *See* Government Exhibit 1, Pg. 81-83. Therefore, the undersigned finds that the Court did not clearly err in finding that there is probable cause to believe that petitioner is guilty of murdering seven people in Accomarca on September 13, 1985. Consequently, the undersigned recommends that petitioner's extradition be upheld on those charges in addition to the alleged crimes committed on August 14, 1985.

## IV. DOUBLE JEOPARDY

### A. Article IV of the Treaty

Petitioner next argues that Article IV of the Treaty precludes his extradition. Article IV(1)(a) provides that extradition shall not be granted "if the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested." Petitioner concedes that the plain meaning of this provision bars extradition only when a fugitive was tried in the Requested State, in this case the United States. Because the prior prosecution of petitioner on these charges took place in Peru, the undersigned concludes that the terms of the Treaty do not preclude his extradition on double jeopardy grounds.

---

[2]The extraditing Magistrate Judge found and petitioner does not contest that the documents submitted by the Government of Peru were authentic, admissible, and properly before the Court to consider the evidence in this case. *See* Case No. 08-22414-O'Sullivan, Pg. 11, D.E. 37.

Nevertheless, petitioner urges the Court to look outside the plain meaning of the Treaty and consider the Senate Report on the Extradition Treaty with Peru ("Senate Report"). Describing Article IV(1)(a), the Senate Report simply states that "nothing in this provision enables the Requested State to bar extradition on the ground that the person sought has been convicted or acquitted in a *third* State." Senate Report, Pg. 6, n. 7 (emphasis added). According to petitioner, the fact that the Senate did not address his situation--where a suspect is sought for charges already prosecuted by the *Requesting* State--means that he is not precluded from using a double jeopardy defense. The undersigned declines to make such an inference from a Senate Report footnote that does not address the situation in the instant case. Because a *third* State is clearly not a *Requesting* State, the undersigned finds that the Senate Report is not helpful in addressing petitioner's situation.

Instead, the undersigned concludes that the text of Article IV(1)(a) is perfectly clear and simply does not preclude petitioner's extradition. "The interpretation of a treaty, like the interpretation of a statute, begins with the text." *Medellin v. Texas*, 128 S.Ct. 1346, 1357 (2008). If the Court finds that "the language of the treaty is clear and unambiguous, as with any exercise in statutory construction, our analysis ends there and we apply the words of the treaty as written." *United States v. Duarte-Acero*, 208 F.3d 1282, 1285 (11th Cir. 2000). Because the plain meaning of the text is clear, the undersigned finds no need to utilize other sources to interpret Article IV(1)(a). Moreover, the undersigned could not find and petitioner did not submit any secondary source outside the text that would affirmatively support his position. Therefore, the undersigned concludes that Article

IV(1)(a)'s double jeopardy clause does not apply to petitioner.

## B. Article 14(7) of the ICCPR

Petitioner also argues that Article 14(7) of the International Covenant of Civil and Political Rights ("ICCPR") precludes his extradition on double jeopardy grounds. Article 14(7) of the ICCPR provides, "[n]o one shall be liable to be tried or punished again for an offense for which he has already been finally convicted or acquitted in accordance with the law and penal procedure of each country." ICCPR, art. 14, sec. 7. However, when the Senate ratified the ICCPR, it declared that Articles 1 through 27 are non-self-executing. See 138 Cong. R. S4781-84, April 2, 1992.[3] Indeed, it is well-established in federal courts that the ICCPR is non-self-executing. See e.g. Beazley v. Johnson, 242 F.3d 248 (5th Cir. 2001); Igartua De La Rosa v. United States, 32 F.3d 10, n.1 (1st Cir. 1994); White v. Paulsen, 997 F. Supp. 1380, 1387 (E.D. Wash 1998). "A 'non-self-executing' treaty does not by itself give rise to domestically enforceable federal law. Whether such a treaty has domestic effect depends upon implementing legislation by Congress." Medellin, 128 S.Ct. at 1356 n.2. Because the Senate specifically declined to make Article 14(7) of the ICCPR self-executing, it is not directly binding on domestic courts pursuant to the Supremacy Clause. Consequently, the undersigned concludes that this Court has no power to enforce the terms of Article 14(7).

Petitioner maintains that he may assert Article 14(7) as a valid defense to his extradition because that defense is not a private cause of action contemplated by the

---

[3]The Senate clarified this declaration, stating that "the [ICCPR] will not create a private cause of action in U.S. Courts." Senate Committee on Foreign Relations Report on the International Covenant on Civil and Political Rights, 31 I.L.N. 645, 657 (1992).

Senate when it declared Articles 1 through 27 to be non-self-executing. However, petitioner's attempt to parse the words in the Senate Report misses the point. "The point of a non-self-executing treaty is that it 'addresses itself to the political, *not* the judicial department; and the legislature must execute the contract before it can become a rule for the Court." *Id.* at 1363 (quoting *Foster v. Neilson*, 27 U.S. 253, 314 (1829)). The Senate never executed Article 14(7). Therefore, petitioner cannot raise it as a defense in federal court. The Eleventh Circuit has "held that a treaty must be self-executing in order for an individual citizen to have standing to protest a violation of the treaty." *United States v. Thompson*, 928 F.2d 1060, 1066 (11th Cir. 1991). Therefore, petitioner has no standing to assert a violation of Article 14(7)'s double jeopardy clause.

Finally, petitioner argues that *dicta* in *United States v. Duarte-Acero*, 208 F.3d 1282 (11th Cir. 2000), should guide the Court's analysis. In that case, the defendant was charged in an indictment with conspiracy to murder two Drug Enforcement Administration agents. The defendant filed a motion to dismiss, arguing that Article 14(7) of the ICCPR barred his prosecution because he had already been tried in Colombia. The Court rejected the defendant's argument, holding that "a successive prosecution is barred only when the accused is tried under the same law and criminal procedure. Intuitively, this would only happen when the second prosecution takes place in the same country." *Duarte-Acero*, 208 F.3d at 1286. Therefore, according to the Court in *Duarte-Acero*, it is permissible under the ICCPR for Country X and Country Y to prosecute the same individual for the same criminal conduct. However, petitioner maintains that the Eleventh Circuit's *dicta* in *Duarte-Acero* prohibits multiple prosecutions of the same suspect that take place in one country.

11

While the *dicta* in *Duarte-Acero* and the plain language of the ICCPR seem to support petitioner's construction of Article 14(7), the undersigned still concludes that petitioner cannot raise a defense on double jeopardy grounds pursuant to that Article because it is not judicially enforceable. It is important to note that the decision in *Duarte-Acero* predates *Medellin*, a binding United States Supreme Court case that prevents this Court from allowing petitioner to assert violations of a non-self-executing treaty. Moreover, the Court in *Duarte-Acero* did not need to reach the issue of Article 14(7)'s judicial enforceability because the text of that Article simply did not apply to the defendant in that case.[4] While the text of Article 14(7) may address petitioner's situation, it does not change the fact that this Court is powerless to enforce its provisions.

"The conduct of the foreign relations of our government is committed by the Constitution to the executive and legislative-'the political'-departments of the government, and the propriety of what may be done in the exercise of this political power is not subject to judicial inquiry or decision." *Oetjen v. Central Leather Co.*, 246 U.S. 297, 302 (1918). A "contrary approach would assign to the courts-not the political branches-the primary role in determining how international agreements will be enforced." *Medellin*, 28 S.Ct. at 1363. By rejecting petitioner's double jeopardy defense grounded in Article 14(7) of the ICCPR, a non-self-executing provision of that treaty, the extraditing Court exercised the appropriately limited role afforded to it under the Constitution.

---

[4]It is also important to note that the Court in *Duarte-Acero* recognized the Senate's declaration that Articles 1 through 27 are non-self-executing. *See Duarte-Acero*, 208 F.3d at 1284, n.8.

## CONCLUSION

For all of the foregoing reasons, the undersigned respectfully recommends that this Petition for Writ of Habeas Corpus be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Judge Marcia G. Cooke within ten (10) days of the receipt. *See* 28 U.S.C. §636(b)(1)(C). Failure to timely file an objection shall bar the parties from attacking on appeal the factual findings contained herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

Respectfully submitted this 27th day of July, 2009, in Miami, Florida.

Ted E. Bandstra
United States Magistrate Judge

Copies furnished to:
Honorable Marcia G. Cooke
All counsel of record